## (October 6, 1983)

■ In the Matter of THOMAS SWIFT, Respondent, v SANDRA LEFEVER et al., Respondents, and GEORGE RABONI, Appellant. — In a proceeding to set aside a primary election held on September 13, 1983, which designated George Raboni and Stanley Huested as the Republican candidates for the office of councilmen of the Town of Orangetown, George Raboni appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Rockland County (Slifkin, J.), dated September 28, 1983, as ordered a new primary election as between the appellant and Thomas Swift. Judgment reversed insofar as appealed from, on the law, without costs or disbursements, proceeding dismissed and the board of elections is directed to place George Raboni's name on the appropriate ballot. Petitioner Thomas Swift commenced this proceeding pursuant to section 16-102 of the Election Law to set aside a Republican Party primary election to fill two positions as Republican candidates for Orangetown Town Council (election to be held Nov. 8, 1983). Four candidates appeared on the ballot for the two positions. Special Term found the official election results to be as follows: Stanley Huested 1,025 votes; George Raboni 1,018 votes; Thomas Swift 1,015 votes; William Platz 791 votes. It was conceded by all parties that three voters participated in the Republican primary who were not entitled to do so. As Special Term noted, the margin of victory of George Raboni over petitioner, Swift, was three votes. Two of the ineligible voters were enrolled Democrats and one was enrolled as an Independent. Of the three, two voted in the 9th Electoral District and one in the 34th Electoral District. In both these districts all the voters cast their ballots for two candidates, the maximum votes permitted. We disagree with Special Term's conclusion that "it cannot be said that these invalid three votes did not affect the outcome of the primary election as between Thomas Swift and George Raboni". This is not a situation where "the ratio of irregularities to the margin of victory is of such major proportion [that] we direct that a new election be held" (*Matter of Leaks v Rosenfeld,* 91 AD2d 685, 686 [185 irregularities to 42-vote margin of victory]; see *Matter of Ippolito v Power,* 22 NY2d 594 [101 irregularities to 17-vote margin of victory, therefore, new election]; *Matter of De Martini v Power,* 27 NY2d 149 [149 irregularities to 62-vote margin of victory, no new election ordered]). As the Court of Appeals noted in *De Martini* (p 151): "A new election may be ordered when the 'irregularities * * * render impossible a determination as to who rightfully was * * * elected' (Election Law, § 330, subd. 2). Such invalidation will not be directed on the 'mere mathematical possibility that the results could have been changed'. (*Matter of Badillo* v. *Santangelo,* 15 A D 2d 341, 342.) The burden lies with the party attempting to impeach the results to show

that the 'irregularities are sufficiently large in number to establish the probability that the result would be changed by a shift in, or invalidation of, the questioned votes'. (*Matter of Ippolito* v. *Power,* 22 N Y 2d 594, 597-598; see, also, *Matter of Stevenson* v. *Power,* 27 N Y 2d 152 [decided herewith])". Considered against these standards the irregularities here do not warrant invalidation of the primary election. Although Raboni won the primary by only three votes, his victory only would have been .lost if all three ineligible voters cast one of their votes in his favor (resulting in a vote total of 1,015, the same as Swift's) *and* none of the three cast their remaining vote for Swift (if any had voted for Swift his total would be less than 1,015, Raboni's lowest possible total). The possibility of all votes being cast for Raboni but none being cast for Swift is remote. "In the conceded absence of fraud, a valid determination is not rendered impossible (Election Law, § 330, subd. 2), by the remote possibility of a changed result" (*Matter of De Martini v Power, supra,* p 151). Under the circumstances, the probability is small that the results of the primary would be changed by the invalidation of the questioned votes. Accordingly, we reverse. Lazer, J. P., Gibbons, Weinstein and Boyers, JJ., concur.